Morning. We have four appeals that are scheduled for oral argument this morning. The first is the United States of America v. Jenkins and Allen. Cyrilene Durrett is here for Jenkins. Bruce Stephen Harvey is here for Allen. And Janelle Singh is here for the United States. And Ms. Durrett, you may begin. Thank you, Your Honor, and may it please the Court. The District Court made a clear error in judgment in applying the wrong legal standard when it denied Mr. Jenkins' second request for substitution of appointed counsel. The District Court also erred in finding that Mr. Jenkins should be held accountable for four times as much cocaine as marijuana in relying on so-called decoded phone calls that were allegedly made by Mr. Jenkins and Mr. Allen. I know I will have limited time this morning, so I would like to implore the Court to please review the government's transcripts of calls that were admitted at sentencing, which are at document 859-1, and the transcripts for Mr. Jenkins' request for counsel, document 912, 913, and 914. I think those documents clearly support our arguments here. Moving on to the denial of the right to counsel, denial of appointed counsel, Mr. Jenkins made multiple requests for new counsel in this case. On the hearings for these motions, counsel did not dispute that he did not play audio or video calls for Mr. Jenkins prior to trial. He saw Mr. Jenkins five to six times in the 18 months leading up to sentencing, including trial prep. He wrote one letter and conducted one phone call with Mr. Jenkins during that time. He admitted that he did not understand the procedure for getting electronic discovery into the jail, and he did not know how then to let Mr. Jenkins review these tapes that Mr. Jenkins repeatedly asked to review. Well, all that is required of the district judge is to conduct an adequate inquiry for the purpose of determining whether there is good cause for substitution of counsel. Jenkins is not entitled to counsel of his choice, and the Court can take into consideration unnecessary delay and costs. And so we're going to review this decision for an abuse of discretion, especially given the fact that counsel indicated that there was no breakdown in communications, and the Court credited the testimony of counsel over that of Mr. Jenkins. Well, Your Honor, I think that it is an abuse of discretion, and I'll note that I think the Court applied the wrong standard. In every order that it issued, it talked about how the prosecutor in the case felt like the defense attorney was competent. What's the standard? The standard is just good cause. There was a fundamental problem in the attorney-client relationship, and Mr. Jenkins repeatedly told the Court that there was a fundamental problem and there was a breakdown in communication. But how do we make a determination when the district court made a credibility determination that they found the attorney more credible? I mean, we're not finders of fact. Your Honor, I don't think he stated that he found the attorney more credible. He said the prosecutor says he's diligent. He's tried this many cases in his experience as a lawyer, so I think he's a diligent, competent lawyer. The judge never said, well, I think you're credible that you've been communicating with him or doing what you're supposed to do. The attorney can talk to the prosecutor all day long, but the problem in this case was he wasn't speaking with Mr. Jenkins. He wasn't trying to get discovery to the jail. I will note that co-counsel in this case actually made a record that he couldn't talk to his client because his client was located somewhere else, and the judge ordered that the client be brought to Chatham County. Mr. Jenkins' attorney never made any such request. All he did was tell the court what he had to do. What if the defendant wants the lawyer to file frivolous motions and, you know, those sorts of things? I mean... Yes, I think that brings us to the prejudice that Mr. Jenkins suffered here as a result of denying his request. For instance, in one of the hearings, both or all three, the prosecutor, Mr. Jenkins, and his attorney talk about a plea offer that was made. Well, certainly if Mr. Jenkins had not had the opportunity to review the discovery, discuss it with his attorney, he would not be able to consider the plea offer. Also, Mr. Jenkins noted that the plea offer was to plead to something involving heroin and crack cocaine. Did counsel say he discussed the plea offer with Jenkins? He did, and everyone agreed. He did not dispute that it was a plea offer for heroin and crack cocaine. And at the trial in this case, the district court said, that's not involved in this case. That's not part of this conspiracy. So Mr. Jenkins' complaint about it was something they could have discussed but did not. And I also note that the prosecutor has talked about the defense attorney filing motions in this case. He certainly did not file the motions that Mr. Jenkins talked about. For instance, one of them was about his arrest in Alabama. The testimony at the trial was that he was arrested on a federal arrest warrant. However, he was taken into state custody, not taken before a federal magistrate, and held there in state custody and then brought to Georgia on a writ. Mr. Jenkins said, I want someone to challenge my arrest there. I want to find out what happened about why I was arrested on a federal warrant but taken into state custody. But what about the fact that Mr. Turner says he's filed all the motions that he thought were appropriate and strategic to file? Well, I think there was a breakdown in understanding by Mr. Turner about what the issues were that Mr. Jenkins was aware of. The trial court didn't seem to think that there was a fundamental breakdown. Well, Your Honor, I think that it's unclear from the record whether Mr. Turner understood the kinds of issues that Mr. Jenkins wanted to be raised because he didn't visit Mr. Jenkins very often and didn't understand that. So I do think we have met the standard, Your Honor. I think it was abuse of discretion. Well, I think that Mr. Turner, I mean, Mr. Jenkins, too, was also complaining about the fact that Mr. Turner wasn't keeping his friends and family updated. And the lawyer testified, I can't do that. I can't breach attorney-client communication privilege. Well, Your Honor, Mr. Jenkins made that argument because he was saying, one, Mr. Turner has not been in contact with me, and two, when I asked my family to reach out to him, he does not contact my family. Mr. Jenkins then said, oh, well, I can't do that. But the problem is he didn't address the fact that he had not been keeping Mr. Jenkins informed about the case or showing Mr. Jenkins any of the discovery in the case when he was at a jail where he could not view video or listen to recordings. I know my time is almost up, but I will note just for the record about the calls that the district court aired at sentencing by relying on the arbitrary phone calls, the arbitrary amounts that were supposed to be listed in the phone calls. If the court looks at those transcripts that were admitted, the court attributed 1950 grams of cocaine to Mr. Jenkins. And those calls, that 1950 grams, are not in that transcript. So the transcript is missing calls from January 31st to February 19th, March 4th, March 8th, March 13th, and March 18th. But the court said, nope, I'm still going to credit him with the 1950 grams that are supposed to be listed. We've got a lot of law, though, that says the courts can hold a defendant accountable for acquitted conduct as long as the preponderance of the evidence standard is met at sentencing. That's right, Your Honor. And I think this is a separate issue from acquitted conduct. I do think that's a valid issue. But I think the separate issue here is I don't think the government proved it by a preponderance of the evidence. And it's basically the transcript that is missing at least five days of calls, and the court said that's fine. But the court said I would impose the same sentence regardless of any errors I make in the calculation. That's right, Your Honor. This court's holding in Keene says that we have to go back and look at the guidelines calculation as if the court did not make errors and we calculate the guidelines based on that. Had the court done that, he would have been a level 26. And the sentence here, the 290-month sentence that was imposed, was not a reasonable sentence under the factors in Keene, Your Honor. It doesn't meet that standard. So I see my time is up, but thank you, Your Honor. I think you've reserved some time. So we'll hear from Mr. Harvey. I think it's a great issue. I hope you guys do too. The issue of whether or not Title III applies to someone whose phone calls were intercepted. No matter where it is and no matter under what conditions it is, it is intercepted unless it's with an appropriate warrant directed at that particular person or someone whom this person was involved with. And I think it is an issue of first impression throughout the country. And I think it's propitious that yesterday two members of this panel joined in an opinion in the United States v. Timothy Pate that was published yesterday, number 20-10545, the author of which was Judge Legault. We started that opinion, that panel started the opinion by saying statutory interpretation analysis begins and ends with the statutory text. There is nothing in the statutory text of Title III that accepts anything, anybody, from being an aggrieved person if their phone conversation is intercepted. And Title III applies to those people who are incarcerated, and there's plenty of law to that effect. Let's assume that you're correct, that Allen has standing to challenge the wiretap interception because he meets the definition of an aggrieved person under the statute. The district court never reached the merits of the motion to suppress. So therefore, if we agree with you, do we remand this back to the district court for consideration of that? Yes, I think you do, because it is our position and it has always been our position that there would be no investigation in this case unless this illegally intercepted cell phone conversation started the chain of investigation of Mr. Allen and all of his cohorts. The Title III, the intercept was on another individual who had absolutely no connection to Mr. Allen. The investigation had no connection to Mr. Allen, and Mr. Allen subsequently got the phone call now. But isn't that the, I mean, we may not have to decide this issue, but isn't the wrinkle here that there was a valid warrant to tap the phone for the other individual, and your client purchased the phone? I mean, that's the wrinkle in the case, right? Well, I'm not sure it doesn't have any substantive, it may have substantive application, but it may not be for us to decide in this first instance. And that may be correct, because I think if he does have standing, we do go back to the district court and we can flesh out all of those issues. But the record reflects that once law enforcement authorities realized that the person who was in fact targeted in the investigation that was in fact ongoing had nothing to do with Mr. Allen, they listened to 60, 60, not one, not two, not three, going, whoops, we need to get another warrant, but 60 phone conversations that directly led to this particular investigation. And you may not have to use the merits if you decide that they're standing. I wish you would, because I think it's kind of a cool issue. But that's just me, right? No, I think it's an interesting issue too, but we're not finders of fact. I agree. And you've got to stick with the legislative text. So, unless there are other questions. It appears, well, I'm looking at the government's brief though, that the government has agreed that Allen had standing, correct? Yes. Okay. So, I'm going to wait until the district court hides for you all. All right. Thank you, Mr. Harvey. Ms. Singh, you may proceed. May I please the court, Shanelle Singh for the United States, asking this court to affirm the sentences and convictions of Mr. Allen and Mr. Jenkins. I'll start with Mr. Allen's argument first. Your Honor, yes, the government agrees that Mr. Allen has standing. And no, there's no reason for this case to be remanded to the district court. And that's because the record refutes Mr. Allen's contention that the 13 wiretap authorizations and the wiretaps that were admitted at trial, they are not based off of this Bibb County wiretap, which Mr. Allen alleges to be unlawful. And that's three places in the record where this is discussed. That's at trial, at the motion to suppress evidentiary hearing for Mr. Jenkins, and in the wiretap affidavits themselves. I'll start out with trial at first. At trial, the task force officer from the FBI, he testified that the investigation in this case didn't kick off until August of 2016. And in August of 2016, Mr. Allen was in the Chatham County jail for his state motion for new trial. When he was in the Chatham County jail, he starts making phone calls during which he talks about his drug trafficking activity. When he makes those calls, the Chatham County assistant district attorneys listens to them. They alert the FBI about his calls. And then the FBI starts listening to Mr. Allen's calls. When they listen to the calls, they find out who the communicators are by obtaining pen, register, trap, and trace devices. And it is through those PRTTs that they were able to conduct a traffic stop on one of Mr. Allen's marijuana transporters. That was in November of 2016. And from that traffic stop, law enforcement seized 53 pounds of marijuana. Now, the first wiretap authorization that was obtained in this case was one month after that traffic stop in December of 2016. That's what the wiretaps are based off of, not this other Bibb County wiretap, which is in December of 2015, almost one year before the first target telephone's authorization. So that's what you did by the record. Moreover, I'd like to point out that Mr. Allen had an opportunity to cross-examine TFO Petro at trial about the origins of the investigation. He did not. And that's specifically at, just to point to the record, on pages 113 through 124 of Document 837. So there's no reason to remand. What was the record said again? That's pages 113 through 124 of 837. That's the entire cross-examination of Mr. Allen for the TFO Petro. None of the questions were about the origins of the investigation. And at the motion to suppress evidence hearing, TFO Petro specifically testified that he did receive information from Bibb County about Mr. Allen speaking on their wiretap. He had told the Bibb County authorities to send him those calls after their wiretap was done. They did that in about early 2016. At that point, TFO Petro testified that he had received thousands of calls. He didn't review those calls at that point. He sent them to FBI headquarters for a review and transcription. That took about four or five months. After that, when he received the transcription, he said so much time had passed. They didn't use that information, but the investigation took a pause until August of 2016. Again, corroborating the trial testimony about the jail calls of Mr. Allen, then leading to the first wiretap authorization. So again, no reason for remand on that issue. And irrespective of standing, the government wins. To go to Mr. Jenkins' issue about his motion for new counsel of denial, as Your Honor said, it is an abuse of discretion standard. Mr. Allen—excuse me, sorry. Mr. Jenkins, he had two evidentiary hearings on the issue of new counsel. Each time, the lower court set out the standard of good cause. We then heard from the prosecutor about his opinion on Mr. Jenkins' counsel, about how he's been communicating on the case and his mastery of the facts. Prosecutor informed the court about that. Then the court asked the prosecutor to leave the room, after which the court engaged in ex parte discussion with Mr. Jenkins and his counsel. The court first asked Mr. Jenkins about what his allegations were, so the court was abreast of the allegations. After each allegation, Mr. Jenkins' counsel then addressed those issues. And yes, the court had credited Mr. Jenkins' counsel over Mr. Jenkins. And Mr. Jenkins' subjective intentions does not entitle him to new counsel. Also, there would be no prejudice in this case, so Mr. Jenkins loses on that issue. About sentencing and the drug quantity calculation, as Your Honor pointed out, the district court specifically said that irrespective of any of the guideline calculations, he still would have sentenced Mr. Jenkins to 290 months imprisonment, and that's under the 3553A factors. And he specifically set out the history and characteristics of Mr. Jenkins, noting that he didn't come to the court with a clean criminal history. He had a violent criminal history for domestic violence and manslaughter. On top of that, he talked about the nature and circumstances of the case involving Mr. Jenkins being one of the leaders of this drug trafficking organization, during which he aided Mr. Allen, who was a state prisoner convicted for murder. There are no further questions for the government. The government asks this court to affirm. Thank you, Ms. Singh. Ms. Durrett, you've reserved some time for rebuttal. Thank you, Your Honor. So, I will just note that the trial in this case was 95% about marijuana. The evidence in the case was about marijuana transactions that occurred. Three cooperating co-defendants testified. They all pled guilty only to marijuana transactions, and they only discussed marijuana transactions. Those were the witnesses against Mr. Jenkins and Mr. Allen. Then, when we get to sentencing, all of a sudden in the PSR, and you can look at it, every single call that the government is relying on is about cocaine. So, we went from a trial where the jury saw the same transcripts, heard the same calls, and there was 95% about marijuana, and the jury said this is not about more than five kilograms of cocaine, to sentencing where the entire PSR, every call listed in the PSR is a cocaine call, including the calls from Mr. Martin, who was a cooperating co-defendant, who said, I exclusively deal in marijuana. So, the idea that we can go from a trial that's 95% about marijuana to a PSR in sentencing that is 100% about cocaine is, I think, a problem. And the court should consider the fact that, again, the transcripts relied upon by the government and relied upon by the court are missing at least five phone calls. I mean, I get what you're saying, but case law doesn't support the argument that this is improper. I mean, this court has previously stated on many occasions that the relevant conduct of which a defendant was acquitted, nonetheless, may be taken into account. That's the acquitted conduct issue, and what I'm talking about is the arbitrary nature of the phone calls that the court relied upon, and all I'm asking the court to do is look at the transcript. What's your case law citation that says this is impermissible? Well, I think the fact that it wasn't proven by even a preponderance of the evidence, Your Honor, that's the standard for sentencing is that they have to show evidence that this evidence was relevant. Not only that, we've said several times that if the court says I would impose the same sentence anyway, even if I err it with regard to the calculation, that there's no error, there's harmless error. I would point the court to Keene, which I referenced in my reply brief at page 23 and 24. If this court, as it would have to do to do a Keene analysis, determined the guidelines, assuming the court made an error, the level would be 26, which would be a resulting guideline of 70 to 87 months. If the court applied the enhancements that the court applied, the guideline range would be 168 to 210. This court then would have to say, yes, under those circumstances, it's reasonable that the judge imposed a sentence of 290 months. And I don't think it's reasonable based on the facts that the judge asserted. So I don't think the government can meet the Keene standard. And as far as the motion for new counsel, Your Honor, the government talked repeatedly about how Mr. Jenkins' attorney filed the proper wiretap motions. Well, I think the government concedes that Mr. Jenkins had standing as to wiretaps 1, 3, and 6, but his attorney did not officially file that. He said those calls were questionable, and he noted that in the document, and the court noted that at docket 588, that he said those calls were questionable, but he didn't actually make a challenge to that. So I think that can be remanded here for the same consideration. Thank you. Thank you, Mr. Reff. Thank you, Your Honor. Mr. Harvey? Mr. Harvey, let me ask a question. How do you address the government's argument that we don't need to remand on the suppression issue because the record indicates that the Chatham County wiretaps were based on an extensive amount of evidence that had nothing to do with the Bibb County wiretaps? That was exactly what I was going to address very quickly. I think it is pretty disingenuous now to say that, okay, we concede standing when at the time the government vigorously argued that we didn't have standing, and therefore we were in a completely different procedural posture as well as strategic posture. And it's disingenuous to say, well, look at the trial transcript or look at the transcript of Mr. Jenkins' motion that I didn't participate nor did I have the same objective when the agent testified at trial. Okay, but however disingenuous it might be, how do you address, how do you confront the evidence that the government is pointing to? I would have the opportunity to try to flesh that out at a pretrial motion, and then the court could make a ruling based upon the record. Well, I'm asking you to do it now. Well, I can't do it now because I didn't have the opportunity to do it then, and the opportunity at trial is completely different. I mean, it's as simple as that. So that's how I would address it. Any other questions? Thank you. Thank you. Thank you, counsel. Thank you. The next case is Mark.